**THOMAS GODFREY**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone:**       **(406) 657-6101**
**FAX:**         **(406) 657-6989**
**Email:**       **Thomas.Godfrey@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR-18-31-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| **STEVEN WAYNE PHILLIPS,** | |
| **Defendant.** | |

The United States of America, by and through Thomas K. Godfrey,

Assistant United States Attorney for the District of Montana, hereby submits the

following Response to Defendant's Motion to Suppress.

# INTRODUCTION

On September 19, 2017, Trooper Kristy Kees, with the Montana Highway Patrol pulled over a white Chevrolet Silverado near the 2nd Shift Bar and Casino in Billings, Montana.  The defendant, Steven Thomas Phillips, was the driver and the sole occupant of the truck.  The truck was pulled over because the registration for the truck had been expired since 2011.  The defendant appeared to Trooper Kees as if he may have been under the influence of drugs based upon his gaunt appearance, his bloodshot eyes, his lethargic behavior, and his incoherent mumbled responses.

The defendant stated he had purchased the truck a few months prior but did not have the title in his name yet and thus had not registered the truck.  Because of the lack of title Trooper Kees decided to check the VIN on the driver's side door of the truck. While checking the VIN in the driver's side door Trooper Kees discovered three pill bottles.  Two of which had pills in them.  One of the bottles had prescription information identifying them as Cyclobenzaprine but the name on the prescription had been blacked out.  The other bottle had no prescription information, and the pills were identified as amphetamine/dextroamphetamine or Adderall. [1]

---

1 Amphetamine/dextroamphetamine or Adderall is a Schedule II controlled substance.  Montana Code Annotated 50-32-224.

After what she had observed Trooper Kees decided to run the defendant through field sobriety tests.  The defendant passed the field sobriety tests, and the defendant offered to call the supposed prescribed owner of the pills "Kim", who stated that the Cyclobenzaprine belonged to her but she did not claim the Adderall. The defendant denied consent to search the truck.  Trooper Kees made the decision to call for a police drug detection dog.  The dog alerted to the truck, a search warrant was obtained, and ultimately drugs, drug paraphernalia, and firearms were recovered.

Accordingly, the search of truck was justified.  First, there was reasonable suspicion of a traffic violation to pull over the defendant.  Second, Trooper Kees had reasonable suspicion to run the defendant through field sobriety tests and to obtain a drug dog.  Third, Trooper Kees obtained both reasonable suspicion of criminal activity as well as probable cause to search the truck and arrest the defendant based upon the discovery of Adderall for which he did not have a prescription. *See United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (stating that extending traffic stop to await arrival of canine unit did not violate the Fourth Amendment where officer had probable cause to arrest defendant).

## STATEMENT OF FACTS

I.   **Trooper Kees stops the Chevrolet Silverado for registration having been expired since 2011, and sees multiple prescription bottles in the driver's side door.**

On September 19, 2017, Trooper Kristy Kees with the Montana Highway Patrol saw a white Chevrolet Silverado with an expired registration tag.  (*See* Defendant's Exhibits A (Trooper Kees Report), B (CD of dashcam video)). Trooper Kees ran the vehicle registration, which showed that the vehicle's registration had been expired since 2011.  *Id.*  Trooper Kees pulled over the Chevrolet Silverado near the 2nd Shift Bar and Casino near Lockwood Road in Billings, Montana.  *Id.*  The defendant, Steven Wayne Phillips, was the only person in the car and the driver.  *Id.*

The defendant stated he was heading down to Hardin for work and that he worked for Ed's Salvage and Recycling.  *Id.*  Trooper Kees initially became concerned that the defendant under the influence of drugs based on his appearance being gaunt and hollowed, as well as his teeth, bloodshot eyes, incoherent responses, and lethargic behavior.  Exhibit A.  When asked about the registration the defendant stated he had bought the car and was waiting to get the title. Exhibits A, B.  He believed he had purchased the car around June of 2017.  *Id.*  He could not provide any paperwork regarding the sale of the car or the registration so Trooper Kees asked to check the VIN, and the defendant agreed.  *Id.*

Trooper Kees checked the VIN inside the driver's side door and while doing so noticed multiple prescription bottles in the driver's side door.  *Id.*  Trooper Kees asked the defendant about the bill bottles and if she could look at them.  *Id.*  The

4

defendant handed Trooper Kees the first bottle which had the name information blacked out with a marker and the pills were identified as Cyclobenzaprine. Exhibit A.  The second bottle contained pills but no labels.  Exhibit A.  The pills were identified as amphetamine/dextroamphetamine (Adderall). Exhibit B at 22:33:07.  The third bottle was empty.  Exhibit A.  The defendant stated he had gotten the pills out of vehicles in the salvage yard and had been trying to get rid of them.  Exhibits A, B.  He stated that the Cyclobenzaprine belonged to his boss's wife "Kim" whose last name he did not know.  *Id.*

## II.   Trooper Kees has the defendant perform field sobriety tests, and then calls for a police drug detection dog.

Trooper Kees made the decision to run the defendant through field sobriety tests.  *Id.*  The defendant was taken out of the car and run through field sobriety tests, he did not show impairment.  *Id.*  When asked if he had taken any of the pills that night he said no.  Exhibit B.  The defendant offered to call "Kim" and let her talk to the troopers.  Exhibit A.   A trooper talked to "Kim" while Trooper Kees continued to talk to the defendant.  *Id.* "Kim" claimed the Cyclobenzaprine but stated that the Adderall was not hers.  *Id.*

Trooper Kees asked the defendant for consent to search the truck and he declined.  *Id.*  Trooper Kees then called dispatch for a police drug detection dog and a Billings Police Department (BPD) officer with a K9 unit was available.

5

Exhibits A, B.  The BPD officer arrived and deployed his K9 Recon who alerted to the truck.  *Id.*  The defendant was released to his own recognizance and the truck was towed to a garage.  *Id.*  A search warrant was obtained and the truck was searched.  Exhibit A. Firearms, methamphetamine, and paraphernalia were located inside the truck.  *Id.*

## ARGUMENT

### I.     The defendant's Fourth Amendment rights were not violated in the course of the traffic stop on December 12, 2017.

#### A.     The traffic stop was based on objective factors supporting a reasonable suspicion that the Chevrolet Silverado had expired registration.

An officer conducting a traffic stop needs only "reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped [is] breaking the law." *Heien v. North Carolina*, 135 S. Ct. 530, 534 (2014) (internal quotations omitted).  In making a reasonable suspicion determination, the Court must evaluate the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).   In this matter, the defendant was the driver of a vehicle stopped by Montana Highway Patrol and the truck's registration had been expired since 2011.  The defendant does not contest the pullover of the truck.

**B.     Trooper Kees had reasonable suspicion to conduct the field sobriety tests.**

Normally, a lawful investigative stop of a vehicle and its occupants begins when they are pulled over and continues—and remains reasonable—for the duration of the stop, which generally ends when the police have no further need to control the scene. *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).  Permissible police activities consistent with normal mission of the traffic stop include checks "aimed at ensuring that vehicles on the road are operated safely and responsibly." *Evans*, 786 F.3d at 786.

Investigatory stops are governed by the Fourth Amendment and are lawful when a government agent has reasonable suspicion that an individual is engaged in criminal activity.  *Terry v. Ohio*, 392 U.S. 1 (1968); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot).  Reasonable suspicion exists when an officer can "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21.

To determine whether reasonable suspicion existed at the time of the encounter, courts must examine, based on the totality of the circumstances, "whether the detaining officer has a 'particularized and objective basis' for

7

suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (*quoting United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).  Furthermore, investigatory stops are valid if they are objectively reasonable.  *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014).

Reasonable suspicion "is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1079-80 (9th Cir. 2013) (en banc). Reasonable suspicion is more than a mere hunch but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274.

Here, Trooper Kees pulled over the defendant, and she immediately became concerned that he was under the influence of drugs based on his bloodshot eyes, his demeanor, and his appearance.  The truck had not been registered since 2011. The defendant claimed to have purchased the truck several months prior but there was an issue with the title and thus he had not registered it, but he did not have any paperwork on the sale.  Trooper Kees noted that when the defendant talked he would mumble and make statements that did not make complete sense, and that he appeared lethargic.

While checking the VIN for the truck Trooper Kees saw three pill bottles, two of which contained pills in the driver's side door.   One of the bottles with pills

had no labels on it and the other was labelled by the name information was blacked

out.  The third bottle was empty unlabeled pill bottle.    He claimed the muscle

relaxants belonged to his boss's wife but could not remember her last name.

Phillips provided no explanation as to why the name information on the bottle

would be blacked out if they were legitimately prescribed.  The other pill bottles he

claimed he found and would take to an unknown person at the hospital who would

get rid of them.  Those pills were identified as Adderall.

Given the defendants behavior and his possession of medication that he did

not have a prescription for Trooper Kees had ample reasonable suspicion to run

him through field sobriety tests.

> ### C.    Trooper Kees had probable cause to search the truck for evidence related to the defendant's possession of dangerous drugs for the Adderall that was in his driver's side door in an unmarked pill bottle.

A police officer has probable cause to conduct a search when "the facts

available to [her] would 'warrant a [person] of reasonable caution in the belief' "

that contraband or evidence of a crime is present. *Texas v. Brown,* 460 U.S. 730,

742, 103 S.Ct. 1535 (1983) (plurality opinion) (quoting *Carroll v. United States,*

267 U.S. 132, 162, 45 S.Ct. 280 (1925)).  The test is objective and it does not

matter if the defendant was arrested for that charge.

Law enforcement may search an automobile and the containers inside

without a search warrant when they have probable cause to believe that it contains

contraband or evidence of criminal activity. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 804-09 (1982). Such searches are justified because of the inherent mobility of vehicles, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam), which results in a reduced expectation of privacy. *California v. Carney*, 471 U.S. 386, 391-92 (1985).

Trooper Kees discovered amphetamine/dextroamphetamine (Adderall) in an unmarked pill bottle in the driver's side door of the truck the defendant was driving. Adderall is a schedule II controlled substance in the State of Montana. Montana Code Annotated 50-32-224. Being in possession of Adderall without a valid prescription is criminal possession of dangerous drugs. MCA 45-9-102.[2]

Here, there were three bill bottles in the defendant's driver's side door. One bottle was full of Cyclobenzaprine, a muscle relaxant. That pill bottle had the name information blacked out. Another pill bottle had no identification on it, but was full of pills that were identified as Adderall prior to the field sobriety tests. The troopers can be heard identifying the Adderall. Exhibit B at 22:33:07. The defendant identified the Cyclobenzaprine pills as belonging to his boss's wife "Kim" whose last name he did not know. After the field sobriety tests he

---

2 Except as provided pursuant to certain exceptions not applicable here, a person commits the offense of criminal possession of dangerous drugs if the person possesses any dangerous drug, as defined in 50-32-101. Ultimate users and practitioners, as defined in 50-32-101, and agents under their supervision acting in the course of a professional practice are exempt from this section.

volunteered to call, "Kim" who stated that those were her pills, but that she did not know anything about the Adderall.  As to the Adderall, Phillips claimed he found them in cars in the salvage yard, and hung onto them until he could rid of them by taking them to an unknown person at the hospital.

In this case, not only did Trooper Kees have reasonable suspicion of criminal activity, she had more than that, she had probable cause to search the car because he was in possession of Adderall for which he did not have a prescription.[3] That Trooper Kees chose to continue the investigation through the use of a drug detection dog does change the evident probable cause.

> ### D.    Trooper Kees had probable cause to arrest and detain the defendant based on his possession of dangerous drugs without a prescription.

To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124

---

3 Although unnecessary for a probable cause determination, Phillips story about why he was keeping the pills did not make sense.  *See District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018) ("probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts.") He had an unmarked bottle of Adderall pills next to his boss's wife's muscle relaxing pills in his driver's side door, and his story was he was keeping them to get rid of them.  Additionally he had an empty prescription bottle next to the other two bottles.  There would not be any reason to do anything but throw an empty bottle in the trash.  That he had the empty bottle is evidence that he had used the pills inside of it.

S. Ct. 795, 157 L. Ed. 2d 769 (2003) (quoting *Ornelas v. United States*, 517 U. S.

690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)). Because probable cause

"deals with probabilities and depends on the totality of the circumstances," 540

U.S., at 371, 124 S. Ct. 795, 157 L. Ed. 2d 769, it is "a fluid concept" that is "not

readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462

U. S. 213, 232, 103 S.Ct. 2317, 76 L. Ed. 2d 527 (1983). It "requires only a

probability or substantial chance of criminal activity, not an actual showing of such

activity." *Id.*, at 243-244, n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Probable

cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 134 S. Ct. 1090,

1103, 188 L. Ed. 2d 46, 62 (2014).

In *District of Columbia v. Wesby,* the Supreme Court dealt with a case

involving a claim of false arrest in which police came upon a group of partygoers

in a near-empty house who claimed to be having a bachelor party with no bachelor.

138 S.Ct. 577 (2018).  The partygoers were arrested and charged with disorderly

conduct, and the charges were ultimately dropped.  *Id* at 584.  The Supreme Court

found that the officers had probable cause to arrest and thus there was no

Constitutional violation.  *Id* at 589.  The Supreme Court also noted that because

probable cause is an objective standard, an arrest is lawful if the officer had

probable cause to arrest for any offense, not just the offense cited at the time of

arrest or booking.  *Id.* at 584 n.2.

As in *Wesby*, here what is before the Court amounts to a claim that the delay turned the stop into a de facto arrest.  However, Trooper Kees had probable cause to arrest the defendant for possession of dangerous drugs due to the defendant's possession of the Adderall.  Trooper Kees was not required to rule out the defendant's explanation that he was keeping them to get rid of them.  *Wesby*, 138 S.Ct. at 588.  That Trooper Kees did not arrest or cite the defendant for possession of dangerous drugs is similarly not required.  *Id.* at 584 n.2.  The question is simply whether she had probable cause to arrest for any offense, and she did.  *Id.*  Because Trooper Kees had probable cause to arrest for possession of dangerous drugs the detention of the defendant was not unlawful.

> **E.    Even if Trooper Kees did not have probable cause to search the car and arrest the defendant, she had reasonable suspicion to obtain a drug dog.**

Trooper Kees had probable cause to search the car and arrest the defendant, but the United States argues alternatively that there was certainly reasonable suspicion to detain the defendant for a drug detection dog.  Trooper Kees had found Adderall pills inside of the defendant's car, which the defendant admitted to knowing were there.  He had other pill bottles as well, including the bottle with the name information blacked out.  He was driving a truck that had not been registered since 2011, which he claimed to have purchased months ago but had no paperwork for.  Additionally, the defendant had a prior history of drug cases.  Given all of the

things that Trooper Kees observed, including direct evidence of a crime, she was

more than justified in calling for a police drug detection dog.

### F.    The delay in getting a drug dog was not unreasonable.

Once a valid stop occurs, there is no strict time limit placed on the duration

of the investigative stop. *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir.

2005). An officer is authorized to take the time reasonably required to complete the

mission of the stop, including the ordinary inquiries incident to a traffic stop.

*United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015). The officer may only

prolong the stop where there is independent reasonable suspicion justifying the

prolongation.  *Id.*  Importantly, the length of a detention may expand where new

grounds for suspicion of criminal activity unfold.  *Mayo*, 394 F.3d at 1276.

Law enforcement cannot prolong a stop in order to develop reasonable

suspicion, but they can prolong a stop if they developed reasonable suspicion of

additional criminal activities while they were effectuating the original reason for

the stop. *See Evans*, 786 F.3d at 789 ("an officer may prolong a traffic stop if the

prolongation itself is supported by independent reasonable suspicion"). *See also*

*United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). Once an officer has

developed reasonable suspicion of criminal activity unrelated to a traffic stop, he

can prolong the stop in order to allow a trained K-9 to smell the exterior of a

vehicle, so long as the use of the K-9 would reasonably help verify whether the officer's reasonable suspicion is correct. *See Rodriguez*, 135 S. Ct. at 1616.

To determine whether a prolonged stop is justified in duration, the Court considers "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and should not indulge in "unrealistic second-guessing," or imagine some "alternative means by which the objectives of the police might have been accomplished" in a post-hoc evaluation of the circumstances. *Id*. at 686-87 (internal citations omitted).

The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it. *Id*., at 687. Finally, in assessing whether a prolonged investigatory stop is reasonable, courts should not focus on the duration of the detention, but rather the means by which it was accomplished. *United States v. Bond*, 845 F.2d 329 (9th Cir. 1988).

Courts have found longer detentions than here reasonable if an officer has probable cause to arrest. *See United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (stating that extending traffic stop to await arrival of canine unit did not violate the Fourth Amendment where officer had probable cause to arrest

defendant); *United States v. Vinton*, 594 F.3d 14, 24, 389 U.S. App. D.C. 199

(D.C.Cir. 2010) (defendant's rights not violated where, within minutes of traffic

stop officer found knife and had probable cause to arrest him, even though

investigator did not arrive for another 45 minutes); *United States v. Sturgis*, 238

F.3d 956, 959 (8th Cir. 2001) ("Because the agents could have arrested [the

defendant], they didn't violate the Constitution by detaining [the defendant] for two

hours while awaiting the arrival of the canine unit.").

Here, Trooper Kees obtained reasonable suspicion and probable cause prior

to the decision to run the defendant through field sobriety tests and to conduct a

drug detection dog sniff.  Trooper Kees could have lawfully arrested the defendant

and impounded the car because of the Adderall possession of the defendant which

would have detained the defendant until he was seen by a judge on an initial

appearance.  That instead she called for a drug detection dog and ultimately ended

up releasing the defendant is not unreasonable.  Further, even if Trooper Kees did

not have probable cause, which she did, she certainly had reasonable suspicion to

prolong the traffic stop to obtain a drug dog.

## CONCLUSION

For the above reasons, the defendants' motion to suppress should be denied.


Respectfully submitted this 1st day of March, 2019.


KURT G. ALME
United States Attorney

*/s/ Thomas Godfrey*
THOMAS GODFREY
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 47.2, the attached response is

proportionately spaced, has a typeface of 14 points or more, and the body contains

3,734 words.


*/s/ Thomas Godfrey*
THOMAS GODFREY
Assistant U.S. Attorney

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

\* \* \*

I hereby certify that on March 1, 2019, a copy of the foregoing was served

on the following persons by the following means:

| | |
|---|---|
| 1, 2 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   Clerk, U.S. District Court

2.   Gillian E. Gosch
     Federal Defenders of Montana
     Attorney for Defendant

*/s/ Thomas Godfrey*
THOMAS GODFREY
Assistant U.S. Attorney