IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN WAYNE PHILLIPS,<br><br>Defendant. | CR 18-31-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Defendant Steven Wayne Phillips ("Phillips") is charged with Possession of a Firearm not Registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). (Doc. 1.) He has moved to suppress evidence under the Fourth Amendment. (Doc. 21.)

On February 26, 2019, Judge Watters referred Phillips' motion to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Crim. P. Rule 59(a), for the purposes of conducting a hearing and issuing appropriate findings and recommendations. (Doc. 26.)

Phillips asserts that the evidence obtained as a result of a traffic stop should be suppressed because: (1) the officer did not have reasonable suspicion to prolong the traffic stop to allow for a canine sniff; (2) whatever suspicions the officer had

1

about the pill bottles found in Phillips' vehicle were negated when Phillips passed his field sobriety tests; and (3) the prolongation of the stop after field sobriety tests were completed violated the Fourth Amendment.

The Court held an evidentiary hearing on March 25, 2019, and the parties presented evidence on the motion. Having considered the parties' arguments and submissions, the Court **RECOMMENDS** that Phillips' Motion to Suppress be **DENIED**.

I.  **BACKGROUND**

The Court heard testimony from Montana Highway Patrol Trooper Kristy Kees. The following facts are taken from the hearing testimony, and the exhibits attached to Phillips' brief, which were admitted into evidence at the hearing.[1]

On September 19, 2017, at approximately 10:20 p.m., Trooper Kees pulled Phillips over because his license plate was expired. Phillips told Trooper Kees that he was driving to Hardin for work. He stated he worked for Ed's Salvage and Recycling. Phillips provided Trooper Kees with his insurance card and driver's license. Phillips explained that he did not have the registration for the vehicle because he had purchased it from Ed's Salvage and was waiting to get the title.

---

[1] Defendant attached as exhibits an Incident Report authored by Trooper Kees (Exhibit A), and a video from Trooper Kees' dashboard camera (Exhibit B). (Docs. 22-1; 23.) Both exhibits were admitted at the hearing. (Hearing Trans. at 3-4.)

Because Phillips could not provide any paperwork on the sale of the vehicle, Trooper Kees asked him if she could open the driver's side door to check the VIN. While Trooper Kees was looking at the VIN she noticed there were three prescription medication bottles in the pocket of the driver's side door. Phillips told her that one of the bottles belonged to his boss's wife, Kim, and the others came from salvaged vehicles. Two of the bottles contained pills. The first had a prescription label identifying it as Cyclobenzaprine, but the patient's name on the label was blacked out. The second bottle contained pills, but had no prescription information. The third bottle was empty.

Trooper Kees testified that she noticed Phillips' eyes were bloodshot, he mumbled when he spoke, and he appeared gaunt. Based on these observations, combined with the pills she found in the vehicle, Trooper Kees suspected Phillips was possibly driving under the influence. Approximately 7 minutes into the stop, Trooper Kees ran Phillips' information through dispatch and requested a check for prior drug offenses. Dispatch responded that Phillips' license was valid. The records check was positive for drug history.

Thereafter, Trooper Joshua French arrived on scene as backup. Trooper Kees showed him the pill bottles and relayed her suspicions that Phillips may be under the influence. She noted, however, that she did not witness any driving behaviors indicating impairment, and she did not smell anything on Phillips.

Trooper French identified the pills in the unmarked second bottle as Adderall. This occurred approximately 13 minutes after Trooper Kees had stopped Phillips.

Trooper Kees decided to conduct field sobriety tests, and asked Phillips to exit his vehicle. Phillips passed all of the field sobriety tests. Phillips then offered to call Kim to have her talk to the troopers about the pills found in his vehicle. Approximately 30 minutes into the stop, Trooper French spoke with Kim. Kim told Trooper French the Cyclobenzaprine was hers, but not the Adderall.

While Trooper French spoke with Kim, Trooper Kees asked Phillips for consent to search the vehicle. He declined to give consent. After Trooper French ended the call with Kim, he advised Phillips that because he denied consent to search the vehicle, the troopers would call a canine unit and apply for a search warrant. Trooper French also advised Phillips that he would likely go to jail for felony drug possession of the Adderall.

About 36 minutes into the stop, Trooper Kees requested a canine unit. Billings Police Officer Nyquist arrived on scene with a narcotics detection dog approximately 13 minutes later. The dog positively indicated on the vehicle. Trooper Kees informed Phillips that she would be seizing the vehicle, and released him on his own recognizance.

Trooper Kees applied for a search warrant, and the subsequent search revealed multiple pistols and rifles, including a rifle with a sawed-off barrel, and

drugs and drug paraphernalia.

## II.   DISCUSSION

Phillips argues Trooper Kees did not have independent reasonable suspicion to prolong the traffic stop in order to call in the drug dog.  Therefore, he argues the evidence obtained as a result of the search should be suppressed.  The Government contends the search was lawful because Trooper Kees not only had reasonable suspicion of criminal activity, but also had probable cause to arrest Phillips upon discovery of the Adderall.  The Government argues that because there was probable cause to arrest Phillips, his continued detention did not violate the Fourth Amendment.

The Fourth Amendment protects persons against unreasonable searches and seizures.  U.S. Const. Amend. IV.  A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  A traffic stop is analogous to a so-called *Terry* stop, and can last only as long as is reasonably necessary to carry out the "mission" of the stop.  *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015).  The "mission" of a traffic stop includes "determining whether to issue a traffic ticket . . . checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id.* at 1615.  A stop that exceeds the time needed to carry out these tasks violates the

Constitution's shield against unreasonable seizures, unless the prolongation is supported by independent reasonable suspicion to justify detaining the individual. *Id.* at 1615. Thus, the authority to detain for purposes of a traffic stop ends when "tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* at 1614.

In *Rodriguez*, the Supreme Court held that dog sniffs are "not fairly characterized as part of the officer's traffic mission," but are rather a measure aimed at investigating criminal wrongdoing. *Id.* at 1615. Therefore, if a traffic stop is extended to call in a drug dog, the officer must have independent reasonable suspicion to justify the prolongation. *Id.* at 1616; *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015).

Here, Phillips does not contest that Trooper Kees had reasonable suspicion for the initial stop. Phillips argues, however, that the traffic mission was complete after he passed the field sobriety tests. He asserts at that point, the prolonged stop became unlawful because it was not supported by independent reasonable suspicion.

Trooper Kees acknowledged on cross-examination that her mission did shift from traffic enforcement to a criminal investigation after conducting the field sobriety tests. In the circumstances of this case, however, the Court finds the continued seizure was justified.

Approximately 13 minutes into the stop, Trooper French identified the pills in the unmarked bottle as Adderall. Adderall (amphetamine/dextroamphetamine) is a schedule II controlled substance in Montana. Mont. Code Ann. § 50-32-224(3)(a). Being in possession of Adderall without a valid prescription constitutes criminal possession of a dangerous drug in violation of Mont. Code Ann. § 45-9-102. Thus, at that point, Trooper Kees had probable cause to arrest Phillips for possession of dangerous drugs.

In *Rodriguez*, the Supreme Court stated that "[a] seizure justified *only* by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 1616 (emphasis added). Here, however, the continued seizure was not solely justified by the traffic violation. Rather, 13 minutes into the stop, it was also justified by probable cause to arrest for a drug offense. When a seizure is justified by more than reasonable suspicion of a traffic violation, such as when there is probable cause to arrest for a criminal offense, a continued detention is lawful. Indeed, courts have recognized that where officers have probable cause to arrest, extending a stop to await the arrival of a canine unit is not unlawful.

For example, in *United States v. Sturgis*, 238 F.3d 956, 959 (8th Cir. 2001), the defendant argued federal agents improperly detained him for two hours after he was seized at a motel on suspicion of dealing narcotics. The court held that

"[b]ecause the agents could have arrested [the defendant], they didn't violate the Constitution by detaining [him] for two hours while awaiting the arrival of the canine unit." *Id.* The court also noted that it was "immaterial that the agents didn't formally arrest [the defendant] while they waited for the canine unit." *Id. See also United States v. Chavez*, 660 F.3d 1215, 1223-24 (10th Cir. 2011) (finding that extending a traffic stop to wait for a canine unit to arrive did not violate the Fourth Amendment because the officer had probable cause to arrest the defendant within 9 minutes of initiating the stop).

Similarly, in *United States v. Bravo*, 2015 WL 1650287 (M.D. Tenn. April 14, 2015), the defendant was stopped by a highway patrol officer for a window tinting violation. During the course of the stop, the officer became suspicious the defendant was engaged in human trafficking. *Id.* at *1-2. Approximately 16 minutes into the stop, the defendant's son (and co-defendant) effectively confessed that they were being paid to transport undocumented aliens. *Id.* at *2. Thereafter, the officer contacted DHS to respond to the scene. *Id.* at *3. Ultimately, the defendant was detained for nearly three hours until DHS agents arrived. *Id.* The Court held the delay occasioned by the wait for DHS agents did not violate the Fourth Amendment because the trooper had probable cause to arrest the defendant for illegal transportation of aliens within 16 minutes of the initial stop. *Id.* at *7.

Here, like the cases discussed above, Trooper Kees developed probable cause to arrest Phillips for a drug crime unrelated to the traffic violation not long after the stop was initiated. As recognized by the Eighth Circuit in *Sturgis*, it is irrelevant whether Phillips was actually placed under arrest. Law enforcement is not required to make an arrest once they have probable cause to do so. *Chavez*, 660 F.3d at 1225. *See also, Kentucky v. King*, 563 U.S. 452, 467 (2011) ("[law enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause") (quoting *Hoffa v. U.S.* 385 U.S. 293, 310 (1966)). Therefore, Phillips' detention until the canine unit arrived did not violate the Constitution because it was justified based on probable cause.

Further, this case is distinguishable from *United States v. Evans*, 786 F.3d 779 (2015) and *United States v. McDuffie*, 671 Fed.Appx. 490 (9th Cir. 2016), relied on by Phillips. Neither of the officers in *Evans* or *McDuffie*, had probable cause to arrest for an offense unrelated to the initial traffic stop. *E.g. McDuffie*, 671 Fed.Appx. at *491-92 (holding trooper did not even have reasonable suspicion of drug trafficking to justify prolonging an ordinary traffic stop); *Evans*, 786 F.3d at 788-89 (making no finding of probable cause to arrest and remanding to district court to consider in the first instance whether there was reasonable suspicion that the car contained contraband).

Phillips also asserts, however, that probable cause to arrest does not necessarily equate to probable cause to search. He argues that, while there may have been probable cause to arrest him, there was insufficient evidence to establish probable cause to search; *i.e.*, evidence that additional contraband or evidence of a crime would be found in the vehicle. But Phillips is not challenging whether there was ultimately probable cause to conduct the search of his vehicle. Following the dog alert on the vehicle, a search warrant was obtained which is unchallenged here. What Phillips objects to is the length of his detention. He alleges that the length of his detention was unconstitutional, and that the ultimate search of his vehicle was the fruit of that unlawful detention. As discussed above, however, his detention was not unlawfully prolonged after resolution of the traffic-related reasons for the stop. It was justified by probable cause to arrest for possession of dangerous drugs.

Therefore, the Court finds the extension of the stop while Trooper Kees waited for the canine unit was justified. Accordingly, the Court finds Phillips' Fourth Amendment rights were not violated.

## III.   CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Phillips Motion to Suppress (Doc. 21) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 12th day of April, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge